# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LORENA T.,

        Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

Case No. 21 C 6175

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Lorena T. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

## BACKGROUND

Lorena was 44 years old when she applied for disability insurance benefits on July 6, 2012, alleging disability as of January 1, 2012 due to severe anxiety, panic disorder, depression, and rheumatoid arthritis. Her treatment has included cognitive behavior therapy and medications such as Xanax and Flexeril. Lorena obtained a GED in 1985 and has previously worked as a manager, hairstylist, and chief of staff for the Illinois House of Representatives.

On May 19, 2021, the administrative law judge ("ALJ") issued a decision denying Lorena's application. (R. 1656-1680). The ALJ concluded that Lorena's major depressive disorder, anxiety disorder, and arthritis were severe impairments but did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 1659-64. The ALJ specifically considered Listings 1.15, 1.18, 12.04, and 12.06. *Id.* at 1660-64. Under the "Paragraph B" analysis, the ALJ found that Lorena had a mild limitation in the functional area of understanding,

remembering or applying information and moderate limitations in the other three functional areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *Id*. The ALJ then determined that Lorena had the residual functional capacity ("RFC") to perform light work except she could: (1) frequently climb ramps and stairs but never ladders, ropes or scaffolds; (2) frequently balance, stoop, kneel, crouch and crawl; (3) tolerate occasional exposure to and could occasionally work around vibration, hazards such as moving machinery or unprotected heights; (4) perform work that involved simple, routine tasks requiring no more than short, simple instructions and simple work related decision making with few work place changes; (5) maintain occasional contact with the general public of a brief, superficial and incidental nature and occasional interaction with supervisors and co-workers; (6) work in proximity to others but with no shared or so-called tandem tasks; (7) not perform fast paced work, conveyor belt work, and work with strict production quotas; and (8) could meet end of the day production goals. *Id*. at 1664-78. Based on the vocational expert's testimony, the ALJ found that Lorena is unable to perform her past relevant work as a district retail manager. *Id*. at 1678. The ALJ determined that Lorena was not disabled because she can perform jobs existing in significant numbers in the national economy, including general office helper, inspector packer, and assembler. *Id*. at 1678-80. The Appeals Council denied Lorena's request for review. *Id*. at 1647-52.

## **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently

unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. §§ 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154 (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Lorena raises four challenges in this appeal: (1) the ALJ violated the law of the case as set forth in this Court's February 2020 opinion reversing and remanding the May 2018 ALJ decision; (2) the ALJ improperly evaluated certain opinion evidence from the testifying medical expert; (3) the ALJ's assessment of her fatigue and need to nap did not comply with Social Security Ruling

96-8p; and (4) the ALJ's subjective symptom evaluation was patently wrong. The Court agrees that the ALJ made a mistake of fact in evaluating the RFC opinion of Dr. Allen Heinemann, a clinical psychologist testifying as a medical expert ("ME"), and remands on this basis.

An ALJ may permissibly rely on a testifying medical expert in assessing a claimant's work limitations. *McGillem v. Kijakazi*, 2022 WL 385175, at *4 (7th Cir. 2022). "An ALJ may obtain a medical expert's opinion for several reasons, including to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing and to determine the claimant's residual functional capacity." *Apke v. Saul*, 817 F. App'x 252, 256-57 (7th Cir. 2020) (quoting *Gebauer v. Saul*, 801 F. App'x 404, 408 (7th Cir. 2020)). Moreover, an ME "can help ALJs resist the temptation to 'play doctor' . . . by evaluating medical evidence on his or her own." *Id.* An ME may be particularly helpful "when evaluating the severity of a condition . . . marked by subjective and fluctuating symptoms." *Id.*

Because Lorena's claim was filed before March 27, 2017, the ALJ was required to weigh Dr. Heinemann's opinion under the factors set out in 20 C.F.R. § 404.1527(c). Specifically, "when deciding how much weight to afford an ME's opinion, the ALJ is required to consider the nature of the examining or treating relationship, consistency and supportability of the opinion, and the doctor's specialization." *Latesha K. v. Kijakazi,* 2021 WL 3209644, at *4 (N.D. Ill. July 29, 2021). Finally, an ALJ must build an "accurate and logical bridge" from the evidence to her decision to discount an ME's opinion. *Stocks v. Saul*, 844 F. App'x 888, 892 (7th Cir. 2021).

Medical expert Allen Heinemann, Ph.D., testified at the January 28, 2021 hearing. (R. 1698-1709). Dr. Heinemann stated that during the relevant period at issue prior to the date last insured of June 30, 2014, the record established that Lorena suffered from the medically determinable mental impairments of panic disorder with agoraphobia and generalized anxiety

4

disorder. *Id*. at 1699. Dr. Heinemann testified that these conditions were severe mental impairments during the relevant period, but they did not meet or equal Listing 12.06. *Id*. 1699-1700. Regarding the Paragraph B criteria, Dr. Heinemann testified that Lorena was mildly limited in her ability to understand, remember, and apply information and moderately limited in her abilities to interact with others, concentrate, persist or maintain pace, and adapt and manage herself. *Id*. 1700. In assessing Lorena's RFC, Dr. Heinemann opined that Lorena: (1) was limited to simple, routine, repetitive tasks primarily because of her persistence and pace issues; (2) she could tolerate occasional interaction with coworkers, supervisors, and the public; and (3) she would be limited in terms of getting to a job and home again and a job "would need to be relatively close to her home so to minimize any commute time or telework of some sort." *Id*. at 1701.

Overall, the ALJ gave Dr. Heinemann's opinion "some weight." (R. 1676). The ALJ emphasized that although Dr. Heinemann was not a treating source and did not have the opportunity to examine Lorena, he is a specialist in his field and familiar with the rules and definitions used in social security determinations and had the opportunity to review a fully developed record at the hearing level. *Id*. The ALJ adopted Dr. Heinemann's Paragraph B criteria opinion and his RFC assessment that Lorena could perform simple, routine tasks with occasional workplace interactions. *Id*. at 1661-63, 1676. The ALJ concluded that this portion of Dr. Heinemann's RFC opinion was persuasive because it was "consistent with and supported by the preponderance of the objective medical evidence of record during the relevant period prior to the date last insured demonstrating minimal clinical findings with generally intact cognitive functioning on psychiatric and mental status examinations by her treating psychiatrist [] and by treating medical providers [] and conservative treatment." *Id*. at 1676. The ALJ gave Dr. Heinemann's opinion regarding commute time/telework "no weight." *Id*. at 1676. According to

the ALJ, "Dr. Heinemann's testimony regarding the frequency of [Lorena's] good and bad days, commute time, ability to learn an unskilled job and ability to respond to criticism are purely speculative" and "there is no objective evidence during the relevant period from which one could gauge these limitations to any degree of medical certainty." *Id.*

Lorena argues that the ALJ erred in her treatment of Dr. Heinemann's opinion because the RFC did not properly account for his opinion that she would need a job relatively close to her home so as to minimize commute time or a telework option. She asserts the ALJ made an improper mistake of fact in discounting that portion of Dr. Heinemann's opinion based on the erroneous conclusion that Dr. Heinemann testified that his proposed limitation was speculative. While a "decision based on speculation [would] not [be] supported by substantial evidence," *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999), the Court disagrees with the ALJ's characterization of Dr. Heinemann's testimony. The ALJ discredited Dr. Heinemann's opinion because she believed he "testified that a limitation that the claimant requires a job that is within close proximity to her residence is speculative." (R. 1679); *see also id.* at 1668 (ALJ stating "Dr. Heinemann testified that his opinion[] regarding . . . commute time . . . [is] purely speculative."). The ALJ is mistaken and her rejection of this portion of Dr. Heinemann's opinion was based on a mistake of fact that may have affected her RFC analysis and changed the outcome.

Read fairly and as a whole, it is clear that Dr. Heinemann did not testify that his mental RFC limitation regarding commute time/telework was speculative. (R. 1698-1709). Rather, in response to questions from Lorena's attorney, Dr. Heinemann opined that it would take Lorena a "bit longer than a typical employee to become familiar with work-related procedures and to become comfortable in [a work] environment," but she would be able to learn a job with simple, routine, and repetitive tasks within 30 days. *Id.* at 1706. Lorena's attorney then asked whether she

6

would be less functional during the first two weeks of those 30 days such that she would need to miss work days or time. *Id.* at 1706-07. Dr. Heinemann responded that he would be "speculating on this." *Id.* at 1707. Dr. Heinemann testified: "I'm just not comfortable based on the evidence, that I can answer that question." *Id.* He explained that the treatment notes in the record focused on situational issues like Lorena's living situation and her son's behavior issues, but they did not discuss work-environments and how she might hypothetically function in them. *Id.* at 1707-08. Although immediately after Lorena's attorney's question, the ALJ interjected a question as to "is there any way to gauge . . . your opinion with respect to the commute time in the treatment records that we have during the relevant period," a fair review of the testimony reflects that contrary to the ALJ's interpretation, Dr. Heinemann's response, "I'm speculating on this," was not in reply to the question about his proposed RFC commute time/telework limitation. *Id.* at 1707. Dr. Heinemann was simply responding to the prior question by Lorena's attorney regarding whether Lorena would be less functional during the first two weeks of a 30-day training period. Dr. Heinemann did not testify that his proposed mental RFC limitation of a job relatively close to home or telework was speculative, and the matter was not pressured further by the ALJ during hearing. Because the ALJ's decision is based on a factual mistake about the impartial medical expert's testimony, the ALJ failed to build an accurate and logical bridge between the record and her reason for rejecting the testifying ME's opinion that Lorena would need a job close to her home or telework.[1]

Lorena argues that the ALJ's mistake of fact here is not harmless because if the ALJ had adopted the portion of Dr. Heinemann's opinion dealing with commute time, the VE may have opined that a person who required a close commute or telework with Lorena's other limitations

---

[1] Dr. Heinemann also testified that he believed Lorena had good days and bad days but indicated he could not "speculate" as to whether a job would increase her bad days. (R. 1704). He said it was possible that Lorena would have peaks of anxiety if employed. *Id.* at 1705.

would not have a significant number of job available to her. "As the Seventh Circuit recognizes, factual errors can be a basis for reversal." *Shilo C. v. Kijakazi*, 2023 WL 2745023, at *13 (N.D. Ill. March 31, 2023) (citing *Sarchet v. Chater*, 78 F.3d 305, 308-09 (7th Cir. 1996); *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006)). An error is harmless only when the Court is "convinced that the ALJ will reach the same result" upon remand. *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021). The harmless error standard is not "an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ inadequate articulation." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2012).

In this case, it is not clear the VE and the ALJ would have reached the same conclusions had Dr. Heinemann's opinion been adopted in full. Not only did the ALJ omit the close commute or telework limitation from the RFC without providing an accurate explanation, but the ALJ did not ask the VE whether jobs existed that Lorena could perform with such a limitation. Given the absence of VE testimony regarding this issue, the Court cannot be sure that the result would have been the same if the ALJ had incorporated this limitation into both the RFC and a hypothetical question. *Joshua J.H. v. Kijakazi*, 2022 WL 2905673, at *4 (N.D. Ill. July 22, 2022). Further, the Commissioner does not claim than any error in this regard was harmless because the additional limitation to needing a job relatively close to home to minimize commute time or telework would not change the VE's testimony. *Id*; *Arej v. Sessions*, 852 F.3d 665, 669 (7th Cir. 2017) ("The government has not raised harmless error here, so that argument is waived") (Sykes, J. concurring). As the ALJ's decision to reject Dr. Heinemann's commute time/telework opinion was not supported by substantial evidence and is not harmless, this case must be remanded so the ALJ can re-evaluate Dr. Heinemann's opinion based on a correct reading of his testimony.

The Commissioner does not directly address the ALJ's characterization of Dr. Heinemann's testimony regarding commute time/telework.[2] Doc. 19 at 10-11. Rather, the Commissioner tries to justify the ALJ's conclusion by arguing that the ALJ properly "took issue with the portion of Dr. Heinemann's opinion concerning the jobs being close to plaintiff's home." *Id*. at 11. The Commissioner makes a number of arguments: (1) 20 C.F.R. § 404.1566(c)(2) specifies that ALJs do not consider the "lack of work in [the claimant's] local area;" (2) the ALJ rightly noted that such a restriction was vague and difficult to gauge in terms of medical certainty; and (3) to the extent the limitation represented a conflict, the ALJ resolved that conflict by relying on the opinions of the other doctors who did not recognize such a limitation. Doc. 19 at 10-11.

The Court is unpersuaded by the Commissioner's attempts to defend the ALJ's ruling on these grounds. First, these were not justifications relied upon by the ALJ and thus are improper post hoc rationalizations. *Lothridge v. Saul*, 984 F.3d 1227, 1234-35 (7th Cir. 2021); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016). Second, the Commissioner's post-hoc arguments lack merit. The Commissioner argues that the ALJ properly rejected Dr. Heinemann's proposed limitation concerning the job being close to Lorena's home or telework because 20 C.F.R. § 404.1566(c)(2) specifies that ALJs do not consider the "lack of work in [the claimant's] local area." Doc. 19 at 11. The Commissioner's argument misses the point. It is true that "work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether . . . work exists in the immediate area in which you live." *Browning v. Covlin*, 766 F.3d 702, 708 (7th Cir. 2014) (quoting 20 C.F.R.

---

[2]	The Commissioner asserts that Dr. Heinemann testified that his testimony that Lorena could learn work within thirty days was based largely on speculation. Doc. 19 at 10-11. The Court disagrees. Dr. Heinemann testified that "30 days would be sufficient" for Lorena to learn a job with simple, routine, repetitive tasks but that he would be speculating on the question of whether she was going to be less functional during the first two weeks of those 30 days than the last two weeks. (R. 1707-08).

§ 404.1566(a)).  Further, the Commissioner is correct that under 20 C.F.R. § 404.1566(c)(2), if the claimant's RFC and vocational abilities make it possible for her to do work which exists in the national economy, but she remains unemployed because of "lack of work in [her] local area," the ALJ will determine that she is not disabled.  But the issue at this stage of the analysis is not whether the ALJ should have considered a lack of work in the local area in considering job availability, but whether the ALJ correctly assessed the opinion from the impartial testifying medical expert.[3]

The Commissioner also urges that the ALJ "rightly noted that restriction was vague and difficult to gauge in terms of medical certainty." Doc. 19 at 11.  The ALJ did not find that Dr. Heinemann's restriction was vague.  After finding Dr. Heinemann's testimony regarding commute time and/or telework "purely speculative" (not vague), the ALJ stated that she assigned it "no weight" because "there is no objective medical evidence during the relevant period from which one could gauge [this] limitation[] to any degree of medical certainty." (R. 1676).  In other words, the ALJ believed "Dr. Heinemann testified that there is no way to gauge to a degree of medical certainty that [Lorena's] abilities in this respect based on the medical evidence of record during the relevant time period, [given] [Lorena's] treatment focused on situational stressors rather than work function." *Id*. at 1668.  Again, a review of Dr. Heinemann's testimony reveals that the ALJ's interpretation is not a reasonable one which is supported by the record.  Dr. Heinemann did not testify that he was unable to form an opinion to a reasonable degree of medical certainty about

---

[3]      In addition, the Commissioner fails to note that an exception to the rule applies when the claimant's condition renders a job outside of a radius unavailable to her. *See Browning*, 766 F.3d at 708 ("the claimant's disability [] makes the number of jobs in the region or nation irrelevant, because it prevents her from moving.").  When "immobility is a consequence of the disability," it needs "to be factored into the analysis of job availability." *Id*; *see also Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) (citing *Harmon v. Apfel*, 168 F.3d 289, 292; *Lopez Diaz v. Sec'y of Health, Educ. &Welfare*, 585 F.2d 1137, 1140-42 (1st Cir. 1978)) ("An ALJ must consider [] 'intrinsic' effects because they prevent the claimant from accessing certain jobs in the local or national economy.").  In this case, Dr. Heinemann indicated that Lorena needed a job relatively close to her home or telework because of her anxiety disorder.

whether Lorena required a job close to home or telework. To the contrary, Dr. Heinemann reviewed the entire record and cited to specific evidence in support of his opinion in this regard. Dr. Heinemann expressly linked his opinion to a "statement that she's unable to leave her home for more than a few hours in [Exhibit] 14F" and "that would appear to have consequences for a commute time.[4] *Id*. at 1705. Accordingly, it was improper for the ALJ to find that Dr. Heinemann's findings were not based on a degree of medical certainty where Dr. Heinemann did not so testify and the ALJ did not cite to any medical evidence to support her assertion. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) ("An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record.").

Moreover, the ALJ's conclusory statement that Dr. Heinemann's proposed commute time/telework limitation is not supported "by the preponderance of the medical evidence during the relevant period" is unexplained and the ALJ does not cite to specific medical evidence in the record supporting her conclusion. (R. 1679). For example, the ALJ does not discuss or explain how Dr. Heinemann's opinion is unsupported by the treatment records nor does she explain how Dr. Heinemann's opinion is inconsistent with the other opinion evidence. And in fact, earlier in the decision, the ALJ appears to have credited Lorena's difficulty leaving her home. In explaining how the evidence supported Dr. Heinemann's finding of a moderate limitation in concentrating, persisting, or maintaining pace, the ALJ stated that she found Dr. Heinemann's testimony more persuasive than the findings of the other medical opinions and supported by the medical evidence of record "given the frequency of [Lorena's] anxiety and difficulty leaving her home." *Id*. at 1663.

---

[4]     In response to Lorena's counsel's question about whether being at work for eight hours would exceed her inability to be out of her home for more than a few hours, Dr. Heinemann opined that Lorena would be able to work for eight hours. (R. 1706). He explained his rationale as follows: "My impression is that if there's an unfamiliar environment with time that would become a familiar environment, it probably would take her a bit longer than a typical employee to become familiar with work-related procedures and to become comfortable in that environment, but once she does, I think that would not be an issue." *Id*.

Thus, the ALJ's general, non-specific statement that Dr. Heinemann's commute time/telework opinion is not supported by a preponderance of the medical evidence is not sufficient because she did not provide a logical bridge between the evidence and her conclusion.

Finally, the Commissioner argues that to the extent the commute time/telework limitation represented a conflict, the ALJ resolved that conflict by relying on the opinions of the other doctors who did not recognize such a limitation. However, the ALJ did not explicitly state that she relied on any other medical opinion to reject Dr. Heinemann's commute time/telework opinion, and the Commissioner cannot defend the ALJ's decision using a rationale the ALJ did not employ in her decision. *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("[T]he ALJ's decision cannot be defended on a basis not articulated in her order."). The Commissioner's rationale is also inconsistent with the ALJ's explicit finding that she credited Dr. Heinemann's opinion over the other mental opinion evidence. In particular, the ALJ stated she found Dr. Heinemann's opinion "more persuasive and consistent with the objective medical evidence of record" than the state agency psychological consultants' opinions. (R. 1675). Likewise, the ALJ stated that "Dr Heinemann's opinions [were] more persuasive and thus entitled to greater weight" than the opinions of medical expert Nicole Martinez because "Dr. Martinez did not have the opportunity to listen to the claimant's testimony" and "Dr. Heinemann had a more fully developed record for review." *Id*. at 1676.

For these reasons, the ALJ's explanation of the weight assigned to Dr. Heinemann's commute time/telework opinion falls short of satisfying the substantial evidence standard. This case must be remand so the ALJ can reevaluate the weight to be afforded to Dr. Heinemann's opinion and recontact him if necessary. The Court recognizes that Lorena applied for disability benefits over a decade ago and that her application has been remanded twice already, but the Court

cannot dispense with the requirement that substantial evidence support the Social Security Administration's final decision.

Because the Court is remanding based on the ALJ's handling of the testifying medical expert's opinion, the Court declines to address the remaining errors asserted by Lorena. However, on remand, Lorena shall explicitly present her arguments regarding any other alleged errors to the ALJ in a written submission. *See* 20 C.F.R. § 404.983 (when a case is remanded by a federal court for further consideration, "[a]ny issues relating to the claim(s) may be considered . . . whether or not they were raised in the administrative proceedings leading to the final decision in the case.").

## **CONCLUSION**

Plaintiff's request for reversal and remand [16] is granted in part and denied in part, and the Commissioner's request that the Court affirm the ALJ's denial of disability benefits [19] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

Dated:  April 27, 2023

_____
Sunil R. Harjani
United States Magistrate Judge